The opinion of the Court was delivered by
Frost, J.
The plaintiffs claim to retain the proceeds of the sale of the ship fiEolus and her cargo, as creditors in possession, under the attachment Act: or by lien for the general balance of their account against Henry Gore Booth.
The claim to retain, under the attachment Act, is resisted on two grounds: First, that the plaintiffs were not creditors of Booth, on the 5th December; because on that day, they had no actionable debt against him: And, second, that the plaintiffs had not such possession of the ship and cargo, as is required by the attachment Act, to constitute them creditors in possession.
The facts which affect the first question are, that before the 10th August, 1850, (the precise time does not appear,) Booth sent to the plaintiffs an order to purchase, on his account, three thousand bales of cotton: that the plaintiffs completed the execution of the order by the purchase of 506 bales, on the 29th August; which they shipped to Booth on the 3d September. On the 4th, 7th and 8th of September, they drew bills on Booth, which were payable the 25th November. These bills were accepted, but protested for non-payment; Booth having, before the maturity of the bills, become a bankrupt. On the 27th and 28th November, Edward Moon paid these drafts for the honor of the plaintiffs: charged the plaintiffs in account with the amount: and on the 29th November, by letter, remitted the drafts to them : and claimed reimbursement by remittance : which was promptly done. Moon deposed that he looked to the plaintiffs, solely, for indemnity.
The declaration contained the common count for money paid, *181 and a count on the bills of exchange. The outlay for the 506 bales of cotton, expenses, damages and re-exchange, constituted the plaintiffs’ demand.
There can be no doubt that, on the 5th December, the plaintiffs had an actionable demand on both counts. There is no other evidence of any understanding between the parties, at what sight the plaintiffs were to draw against the shipment, than the acceptance by Booth of the bills drawn at 60 days ; which is sufficient proof of their agreement on that subject. The agreement that the plaintiffs should draw, at 60 days, was an extension of credit by them to Booth for the cost of the cotton. It is familiar law, that if one sells goods, on an agreement to accept payment in a bill or note, payable at a future day, after the expiration of that term of credit, if the bill or note is not given, or having been given, is not paid at maturity, the seller may sue for the price of the goods, in indebitatus assumpsit. Nor, if a bill or note was given, is it necessary that it should be in the possession of the plaintiff, at the time when the action is brought. If the bill or note was transferred and remained in the hands of a third person, at the time of trial, that would be a defence to the action : because the defendant might be called on to pay it: but if it is in the hands of the plaintiff, over-due, at the time of trial, that can never happen; Burden vs. Halton, 4 Bing. 454; 1 Chit. PI, 347.
The plaintiffs may also maintain the count on the bills. It cannot be denied that the holder of a bill, paid for the honor of the drawer, holds it as indorsee, with all the rights against the parties to the bill which an indorsement can confer. But there is nothing to prevent the holder surrendering the bill to the party, for whose honor it was paid, and relinquishing to him, all the holder’s rights in the instrument. This Moon did. After he took up the bills, he charged the plaintiffs in account and remitted the drafts to them, looking to them, solely, as he deposes, for indemnity. By the delivery of the bills to the plaintiffs, all remedies on them, except by the plaintiffs, were defeated ; for no person could sue on the bills who had not possession : and Moon *182 could not recover possession of them, by an action of trover against the plaintiffs : because he had agreed to accept the personal liability of the plaintiffs for the payment: and, in execution of that agreement, had charged the plaintiffs in account with the amount of the bills, and had surrendered the bills to them. The plaintiffs’ title to the bills was complete when they were mailed to their address, by Moon : as much so as if Moon had delivered the bills to the plaintiffs’ agent for their use. It is not necessary that a bill should be in the possession of the plaintiff at the time the action is brought. It is sufficient that he has title to it, at that time, though it may be in the hands of a third person.
The next objection to the plaintiffs’ recovery is, that they had not such possession of the ship and cargo as may entitle them to retain the proceeds, as creditors in possession.
By the sixth section of the attachment Act, (3 Stat. 619,) it is provided, that if the absent debtor, whose money, &c. “ shall be attached in the hands of any person, be indebted to the person in whose hands, the moneys,” &c. are attached, such person shall be allowed first to retain his debt. From the use of these terms, (“ in his hands,”) it is argued that the garnishee can retain for his debt only moneys, &c. which may be “ in his hands.”
It will be observed that, in the first section, the sheriff is commanded to attach the moneys, &c., “in the hands” of any person ; and shall summon the person “ in whose hands ” the moneys, <fcc., may be, to appear and discover what money he has “in his hands, possession or power,” belonging to the absent debtor : and if the person shall refuse to discover what moneys, &c. of the absent debtor, he has in his “possession or power,’’ (omitting “ hands,”) he shall be condemned for default. But if' the person shall appear and claim the “ said goods,” &c. he shall be put to plead it.
Now the goods attached “in the hands” of any person, and from which he may retain his debt, must be the same goods which the sheriff is commanded to attach “in the hands” of such person. If the garnishee can only retain for his debt goods *183 attached “ in his hands,” or manual, or actual possession, the sheriff can only attach such goods. By such literal construction the benefits of the attachment Act must be greatly abridged. It is plain, however, from the reading of the statute, that construction cannot be maintained. It cannot be supposed that the garnishee is required to discover moneys, &c., which are not attached and demanded for the satisfaction of the plaintiffs’ claim. The garnishee is required to discover what goods of the absent debtor he has, “ in his hands, possession or powerand if the garnishee shall appear and claim the “said” moneys, <fcc., and his claim is denied by the plaintiff, the garnishee shall be put to plead it. “ The said moneys,” «fee. must mean those in “ his possession or power.” An adversary claim could not arise between the garnishee and attaching creditor respecting a subject not attached. Whatever, therefore, is attached, may be retained by the garnishee, as creditor in possession.
The operation of the Act of 1744 is extended by the Act of 1844 (11 Stat. 290 ;) which provides that the person, in whose “ hands, possession, custody, power, or control,” any property of the absent debtor may be attached, shall give bond to the sheriff, conditioned, among other things, to surrender the property “ thus attached,” as required by law.
It is apparent then, that the garnishee may retain for his debt all “ moneys,” &c. which have been attached or are liable to attachment: and that all moneys are liable to attachment which may be in his “ hands, possession, custody, power or control.”
Was the ship iEolus and cargo so situated with respect to the plaintiffs ?
The facts which bear on this question are, that the iEolus arrived in the port of Charleston, the 25th November, 1850, laden with salt and consigned to the plaintiffs by Booth, of Liverpool. The plaintiffs took possession of the vessel when it arrived, entered it at the Custom House, and began to unlade the salt, the greater part of which was discharged on the 5th December, when the attachment was served. There had, before, been dealings of the like kind, between Booth and the plaintiffs. They were *184 instructed by letter (25th August)<! Booth will instruct you about the ship: we suggest engagement of cargo.” By letter of the 27th, they were further advised, “ the iEolus went to sea, to your address, &c.; you have, enclosed, invoice and bill of lading of the salt. You will apply the proceeds, disbursing the ship.”
On the question of possession of the ship and cargo by the plaintiffs, the case may be rested on the authority of Schepler vs. Garriscan & Carpioin, 2 Bay, 124. In that case, it was decided, that the consignee of a ship and cargo has a qualified property and constructive possession, the moment she comes into port: so that the sheriff shall not, under a writ of attachment, take the ship from the possession of the consignee: and that the consignee has a lien on them for the balance of his general account against the owner.
The books are barren of any information respecting the interest, power, and possession, which may be acquired in a ship by its consignment to an agent, abroad, for affreightment. No authority from the reports nor elementary 'treatises, directly on the question, can be ‘found; and we must be guided by analogies.
Chattels, from their moveable and transferable character, may be the subject of various interests and agencies.' No action can be maintained respecting a chattel, without title or possession. To protect the various interests, and serve the various agencies, of which chattels may be the subject, the law creates as many and various qualified possessions. On the execution of an order, by a factor in Liverpool, for the purchase of goods for a merchant in Columbia, how many are the agencies and interests which intervene between the sale by the vendor and the receipt of the goods by the purchaser. The agency and interest of the Liverpool factor, of the warehouseman, of the owners and master of the ship in which the goods are laden, of the consignee and warehouseman in Charleston, of the carrier to Columbia, and the right of the vendor to stop the goods in transitu — to all these interests and agencies the law attributes a possession, commensurate with the interest and the purposes of the agency.
A ship, like any other chattel, may be the subject of an ab *185 solute, constructive and special property, and of an exclusive and qualified possession. A special interest and qualified possession is created, by operation of law, when necessary or convenient for the purposes of its employment. When in the home port and dismantled, a ship is in the exclusive possession of the owner. When it is equipped and provided with a master and crew, the master acquires a limited possession which is necessary to serve the' purposes of his agency. When the ship sails on her voyage, his agency is enlarged and his' possession is extended. He then becomes the general agent of the owners for the employment of the ship. In a foreign port, he may contract for freight and repairs and supplies: and in case of disaster, may sell the ship. But this agency, like every other, may be restricted by the owner; and the possession, which attended the master’s agency, for the execution of the power revoked, may, together with the revoked power, be transferred to another. If the ship is consigned to a foreign agent for sale, the consignee must have possession for the purpose of delivery to the purchaser. If consigned for employment by charter party, the consignee must have a possession to transfer to the charterer. And if the ship is consigned for general freight, the agency of the master, for that purpose, is revoked and transferred to the consignee. The consignee must then have such possession of the ship as may be necessary, or convenient to the lading of the cargo. The ship must be subject to his order respecting the time and place of lading and the time of sailing. A ship, then, consigned to a foreign agent, to be employed in general freight, is in the “ possession, power, or control,” of the consignee.
It does not conflict with this conclusion, that the master may also retain possession and authority for all other purposes, necessary to the employment of the ship. He must order repairs, equipments and supplies, engage seamen, and protect the ship from damage, trespass or intrusion. Nor is this conclusion weakened by the fact, that the master may hypothecate the ship ; while the consignee cannot. The master cannot hypothecate the ship without the consent of the consignee : for if the con *186 signee will make the necessary advances, the master is not authorized to do it: that authority being given to him, only in case the necessary funds cannot otherwise be procured. The consignee has, of course, no authority to hypothecate the ship : for he is employed to obviate the necessity of any such resort to raise money. Nor does the argument avail anything that the title to a ship can be transferred only by bill of sale : for the question does not concern the title, but the possession.
The plaintiffs and Byrne are both creditors of Booth; and the contest between them is, which shall apply the proceeds of the ship and cargo, which have been sold, in payment of their debt. The sixth section of the attachment Act, puts the garnishee on the same footing with an attaching creditor. It provides that if.the absent debtor is indebted to the person, in whose hands the money, &c. has been attached, he shall be first allowed his debt, “ he forthwith filing his declaration and, in every other respect, proceeding as if he were plaintiff in the attachment.” This provision confirms the construction of the Act which has been adopted, that whatever may be attached may be retained by the garnishee in payment of his debt. Great injustice would be done to the plaintiffs and every consignee, if any other construction were adopted. The consignee cannot have served on himself his own writ of attachment, and make himself garnishee to his action against the absent debtor. If the consignee cannot claim, as creditor in possession, what money, &c., may be attached in his hands, he must, with respect to such money, &c., be postponed to all other creditors; and the moneys, goods, &c., on the faith of the possession of which he gave credit to the absent debtor, would he wrested from him in favor of other creditors, who may have contracted their debts, on the faith of other moneys, &c., or incautiously, on the general credit of the absent debtor. It was to prevent any such wrong that the Act places the garnishee on the footing of an attaching creditor. The service of Byrne’s writ of attachment on the plaintiffs would be nugatory, if the ship and cargo were not in the plaintiffs’ “ possession, power, or control.” By making *187 the plaintiffs garnishees, Byrne has affirmed their possession, power and control. The master, whose possession, it is contended, excluded the plaintiffs, did not contest their possession.
The ship was sold under an arrangement between the plaintiffs and the attaching creditors of Booth : and the proceeds of the sale were paid to the plaintiffs. The attachment Act has placed the plaintiffs in the position of first attaching creditors on all moneys, &c., in their possession.
There can be no doubt that the salt was in the legal possession of the plaintiffs. It was subject to their order, on board the ship, as completely as if it had been in a warehouse. The hill of lading gave them the legal title : and they might have maintained trover against any person who tortiously withheld the possession.
The right of the plaintiffs to retain the ship and cargo as creditors in possession, under the attachment Act, being affirmed, it is unnecessary to express any opinion respecting their right to retain under a lien for the balance of their account against Booth.
The motion is dismissed.
O’Neall, Withe.es and Whitnee, JJ., concurred.